ORIGINAL



**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **FLEXIBLE INNOVATIONS LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Case No. 4:12-CV-856-A** |
| | § | |
| **IDEAMAX, EUGENE LEE, AND** | § | |
| **AEKYUNG LEE** | § | |
| | § | |
| **Defendants.** | § | |

---

### APPENDIX TO DEFENDANTS' REPLY TO
### PLAINTIFF'S RESPONSE TO IDEAMAX, EUGENE LEE, AND AEKYUNG LEE'S
### MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

---

## **TABLE OF CONTENTS**

**Exhibit A.**    Confidential Settlement Agreement ........................................................... 3

**Exhibit B.**    Affidavit of Eugene Lee ........................................................................... 13

# "EXHIBIT A"

DRAFT 16-Feb-12

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement (hereinafter, "Agreement") sets forth the substantive settlement terms as agreed to by Rakupuri, Inc., also known as Rakupuri Co., Ltd. ("Rakupuri"), on the one hand, and IdeaMax, Eunchang Lee, also known as Eugene Lee, and Aekyung Lee, on the other hand, and is intended to state the terms of the final settlement of the Litigation as defined below.  Within this Agreement, Rakupuri, IdeaMax, Eugene Lee, and Aekyung Lee may be identified in the general case as "Party" or, collectively, the "Parties."

WHEREAS Rakupuri, a corporation organized and existing under the laws of Japan, is the owner of all rights, title and good will associated with the trademark DIGICLEAN, including but not limited to U.S. Trademark Registration No. 3,407,948 ("DIGICLEAN Mark"), and offers for sale and sells adhesive wipe products using the DIGICLEAN Mark;

WHEREAS IdeaMax, a partnership organized and existing under the laws of California and is owned and operated by Eugene Lee and Aekyung Lee;

WHEREAS Eugene Lee is the named inventor of U.S. Patent No. 6,613,382 entitled "Method of Manufacturing a Note Poster" issued on September 3, 2003 ("the '382 Patent");

WHEREAS Rakupuri filed a lawsuit commencing the Litigation against IdeaMax, Eugene Lee, and Aekyung Lee seeking declaratory judgment of non-infringement of the '382 Patent, infringement of the DIGICLEAN Mark, false designation of origin, tortious interference with business relations, and unfair competition; and

WHEREAS IdeaMax, Eugene Lee, and Aekyung Lee filed a counterclaim in the Litigation for infringement of the '382 Patent.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including the dismissal with prejudice of the Litigation, the Parties agree to settle the Litigation on the following terms:

1. **DEFINITIONS**

1.1. The term "Affiliates" shall mean, with respect to any Person, any Person which directly or indirectly controls, is controlled by, or is under common control with, such Person. A Person shall be regarded as in control of another Person if it owns, or directly or indirectly controls, at least fifty (50%) of the voting stock or other ownership interest of the other Person, or it directly or indirectly possesses the power to direct or cause the direction of the management and policies of the other Person by any means whatsoever.

1.2. The term "Date of Execution" shall mean the latest date that appears in the Parties' signature block below.

1.3. The term "Litigation" shall mean the matter pending in the United States District Court for the Central District of California, Southern Division (Santa Ana), captioned

BO82.916107.4

Appendix 4

DRAFT 16-Feb-12

Rakupuri, Inc. v. IdeaMax, Eunchang Lee and Aekyung Lee, Civil Action No. SACV11-01428-DOC (MLGx).

1.4.   The term "Patent Rights" shall mean, collectively, (a) U.S. Patent No. 6,613,382 entitled "Method of Manufacturing a Note Poster" issued on September 3, 2003 and any patents equivalent to U.S. Patent No. 6,613,382; (b) all pending patent applications and issued patents anywhere in the world existing as of the Date of Execution that are owned by or licensed (with the right to grant sublicenses) to IdeaMax, Eugene Lee, Aekyung Lee, or their Affiliates, to the extent they claim or cover the making, having made, using, offering for sale, sale, or import of Products; (c) all pending patent applications and issued patents anywhere in the world that claim common priority with any pending patent application or issued patent described in clause (a) or (b) above; (d) all continuation, continuation-in-part, and divisional applications of any of the foregoing patent applications; and (e) all patents, or other form of patent or application of any nature whatsoever, that have issued or will issue in the future from any of the foregoing patent applications, including utility models, design patents and certificates of invention, together with any reissues, reexaminations, renewals, extensions or additions thereto. As used herein, the phrase "pending patent applications" shall be construed to include provisional applications.

1.5.   The term "Know-How Rights" shall mean all trade secret and other know-how rights in and to all data, information, compositions and other technology to the extent specifically relating to the subject matter of the Patent Rights or the Products, in each case that are owned by or licensed (with the right to grant sublicenses) to Ideamax, Eugene Lee, Aekyung Lee, and/or their Affiliates, and have been disclosed to, or otherwise lawfully obtained by, Rakupuri or its Affiliates.

1.6.   The term Person shall mean an individual, corporation, partnership, limited liability company, trust, business trust, association, joint stock company, joint venture, pool, syndicate, sole proprietorship, unincorporated organization, governmental authority or any other form of entity not specifically listed herein.

1.7.   The term "Products" shall refer to any adhesive note poster or cleaning wipe.

1.8.   The term "Related Affiliates" shall mean, with respect to a Party, such Party's accountants, attorneys, tax advisors, and other such professionals to whom disclosure of information or engagement in certain activities may be necessary or useful to comply with applicable laws.

2.   SETTLEMENT AND RELEASE

2.1.   DIGICLEAN Mark. On the Date of Execution, IdeaMax, Eugene Lee and Aekyung Lee, jointly and severally, agree to cease all use of the DIGICLEAN Mark and to refrain from use or registration of any mark in the United States or any other country that is comprised of DIGICLEAN, or any term similar to DIGICLEAN, as a trademark, without the express written permission of Rakupuri. As of the Date of Execution,

Appendix 5

**DRAFT 16-Feb-12**

IdeaMax, Eugene Lee, Aekyung Lee, and their Affiliates will not use the name "Digiclean" on any newly produced products or catalogs and will cease selling, offering to sell, importing into the United States, distributing, and marketing any item using the name "Digiclean." However, Rakupuri recognizes that as of the Date of Execution certain of IdeaMax's customers may have in their respective inventories Products, packaging, catalogs, and/or marketing materials that use the DIGICLEAN Mark (collectively, "Customer Inventory Items"). Rakupuri agrees that each IdeaMax customer may sell its Customer Inventory Items after the Date of Execution provided, however, that such sales are completed and the Customer Inventory Items are disposed of by December 31, 2012. Customer Inventory Items do not include any items that a customer of IdeaMax, Eugene Lee, Aekyung Lee, and/or their Affiliates receives after the Date of Execution, and IdeaMax, Eugene Lee, Aekyung Lee, and their Affiliates agree that as of the Date of Execution they will not directly or indirectly provide any Products, packaging, catalogs, and/or other materials that use the DIGICLEAN Mark. In addition, Rakupuri acknowledges that some website search engines may still link the name "Digiclean" with IdeaMax. As of the Date of Execution IdeaMax, Eugene Lee, Aekyung Lee, and their Affiliates will cease and desist from directly or indirectly instructing operators of search engines to link the DIGICLEAN Mark to IdeaMax and will cancel all contracts and agreements that make any effort to link the DIGICLEAN Mark with IdeaMax.

2. **Release.** The Parties and their respective officers, directors, employees, agents, assigns, representatives, predecessors, successors, successors-in-interest, investors, partners, affiliates, vendors, customers, and insurers hereby release and forever discharge one another and their respective officers, directors, employees, agents, assigns, representatives, predecessors, successors, successors-in-interest, investors, partners, affiliates, vendors, customers, and insurers from any and all claims, actions, causes, causes of action, demands, duties, rights, obligations, liabilities, adjustments, responsibilities, judgments, and trespasses, whatsoever, in law or in equity, whether known or unknown, suspected or unsuspected to exist, now existing or later acquired, that in any way arise out of or relate to the Patent Rights and Know-How Rights, and any of the events that were alleged in the Litigation by any party thereto or its respective officers, directors, employees, agents, assigns, representatives, predecessors, successors, successors-in-interest, investors, partners, affiliates, vendors, customers, and insurers.

3. **Disclaimer of Liability.** The Parties expressly understand, acknowledge, and agree that by reason of entering into this Agreement, none of the Parties admits, expressly or impliedly, any fact or liability of any type or nature with respect to any claim, counterclaim, or other issue raised in, or threatened to be added to, the Litigation, whether or not referred to herein. None of the Parties has made any such admission and this Agreement is entered into by way of compromise and settlement only.

4. **Waiver of Future Claims.** Each Party understands and agrees that this Agreement shall act as a release of any future claims that each Party may have against each other that may arise from the Patent Rights and Know-How Rights, and that all rights under California Civil Code § 1542 are hereby expressly waived. Each Party acknowledges

916107.4

**DRAFT 16-Feb-12**

that it has been advised to consult with legal counsel and is familiar with the provisions of California Civil Code § 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.5.   **Dismissal.**  The Parties hereby agree that, within ten (10) business days from the Date of Execution, they shall file a Stipulation of Dismissal With Prejudice in the Central District of California, Southern Division (Santa Ana) in the form attached hereto as Exhibit A dismissing all claims, counterclaims, and appeals in the Litigation in their entirety, with prejudice, without costs or attorneys' fees being awarded to either party, and each party waiving appeal.

2.6.   **Payment of Fees.**  Each Party shall bear its own expenses, including court costs and attorneys' fees.

3.   **PAYMENT AND OTHER CONSIDERATION**

3.1.   Rakupuri will endeavor to collect an outstanding royalty payment that Rakupuri is owed as of the Date of Execution from non-party Altabiz, which is referenced in the Litigation as a "sister company" of IdeaMax, ("Outstanding Royalty"). For the purpose of this Agreement, the Outstanding Royalty is a fixed amount that does not change after the Date of Execution. IdeaMax does not have any responsibility in collecting the Outstanding Royalty.

3.2.   In the event Rakupuri is able to collect any portion of the Outstanding Royalty, Rakupuri will pay IdeaMax fifty percent (50%) of the portion of the Outstanding Royalty collected from Altabiz, minus Rakupuri's reasonable fees and expenses, including attorneys' fees, associated with Rakupuri's efforts to collect such monies.

3.3.   The Parties mutually agree to hold harmless and release each Party for any damages, whether monetary or in equity, for the inability to collect any portion of the Outstanding Royalty from Altabiz. Specifically, Rakupuri will not hold IdeaMax, Eugene Lee, Aekyung Lee, or their Affiliates (excluding Altabiz) jointly or severally liable for any damages, whether monetary or in equity, and IdeaMax, Eugene Lee, Aekyung Lee, and their Affiliates shall not hold Rakupuri liable for any damages, whether monetary or in equity, resulting from Rakupuri's inability to collect any portion of the Outstanding Royalty from Altabiz.

3.4.   IdeaMax, Eugene Lee, Aekyung Lee, and their Affiliates agree to not object to, or otherwise interfere with, Rakupuri selling, offering for sale, and/or distributing any Rakupuri product in the United States with the assistance of Flexible Innovations, Ltd.

and/or Mr. Fred Antonini, currently located at 1120 South Freeway, Suite 132, Fort Worth, Texas 76104, Tel. 877-534-5551.

3.5.   IdeaMax, Eugene Lee, and/or Aekyung Lee and a representative of Rakupuri will meet at a mutually convenient time in either Los Angeles or Tokyo to discuss the potential of co-development of one or more future products and royalty, if any, under the Patent Rights in connection with those future products. In addition, at this meeting the Parties shall discuss strategies to prevent the sale of counterfeit products manufactured by others, including China-based manufacturers, that compete with Rakupuri or IdeaMax products.  Notwithstanding this paragraph, Rakupuri and IdeaMax, Eugene Lee, Aekyung Lee, and/or their Affiliates are under no obligation to co-develop any future products or agree on any strategy to prevent the sale of counterfeit products.

4.   OTHER PROVISIONS

4.1.   Representations and Warranties.  Each Party represents and warrants that (a) it has the full power and authority to enter into and perform its obligations under this Agreement and to consummate the transactions contemplated hereby; (b) no other Person has or has had any interest in the claims, demands, obligations, or causes of action released by each Party as referred to in this Agreement; (c) the execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized and approved by all necessary action on the part of each Party; (d) no other action on its part or any other Person associated with it is necessary; and (e) all Affiliates of each Party shall be bound by the terms and conditions of this Agreement to the same extent, and with the same legal effect, as if each were an original signatory to this Agreement.

4.2.   Confidentiality.  The Parties and their respective Affiliates shall maintain strict confidentiality of the terms of this Agreement with disclosure limited to their Related Affiliates or as otherwise expressly indicated herein. Except as otherwise provided herein, none of such Persons shall issue any press release or other public statement concerning this Agreement or the subject matter thereof.

4.3.   Notice.  Any notice, demand, request, or delivery required or permitted to be given pursuant to the terms of this Agreement shall be in writing and shall be deemed given (i) when delivered personally or when sent by facsimile transmission and confirmed by telephone or electronic transmission report (with a hard copy to follow by mail), (ii) on the next business day after timely delivery to a generally recognized receipted overnight courier, and (iii) on the third business day after deposit in the U.S. mail (certified or registered mail, return receipt requested, postage prepaid), addressed as follows:

**DRAFT 16-Feb-12**

| If to Rakupuri, Inc.: | If to IdeaMax, Eugene Lee, or Aekyung Lee: |
|---|---|
| Mr. Hiroyuki Anabuki<br>Rakupuri<br>1-3-9 Higashi-Nihonbashi<br>Chuo-ku<br>Tokyo, Japan | Eugene Lee<br>c/o IdeaMax<br>16 Technology Dr., Unit #127<br>Irvine, Ca. 92618 |
| With a copy to:<br>Brian M. Gaff, Esq.<br>Edwards Wildman Palmer LLP<br>111 Huntington Avenue<br>Boston, MA  02199-7613 | With a copy to<br>Matthew A. Reynolds, Esq.<br>Kring & Chung, LLP<br>38 Corporate Park<br>Irvine, CA 92606-5105 |

A party may change its contact information immediately upon written notice to the other party in the manner provided in this paragraph.

4.4.   **Entire Document**.  The Parties intend this Agreement to express all material terms related to the subject matter hereof and to be a legally binding final agreement which supersedes and replaces in their entirety all previous written or oral agreements made between the Parties regarding the subject matter hereof.  The fact that the Parties contemplate that other documents or instruments may be concurrently executed to carry out and effectuate the terms of this Agreement is not intended to render, and shall not render this Agreement unenforceable.

4.5.   **Remedies**.  In the event of a breach of this Agreement the aggrieved Party may initiate an action that seeks damages from the other Party as well as injunctive and/or other equitable relief, including specific performance.  These remedies, as well as the other remedies described in this Agreement, are not exclusive.

4.6.   **Governing Law**.  This Agreement and the rights and obligations of the Parties hereunder shall be governed by and construed under the laws of the State of California exclusive of its choice of law rules.  Any action brought pursuant to or in connection with this Agreement, with the exception of proceedings brought in the U.S. Patent Office, shall be brought only in the state or federal courts within the State of California and the Parties accept the personal jurisdiction of, and waive any objection to the venue in, such courts.

4.7.   **Arms Length**.  When entering into this Agreement, the Parties represent that they have read the contents of this Agreement, that the terms of this Agreement have been fully explained to them by their attorneys, that those terms are fully understood and voluntarily accepted by them, that they have relied on the legal advice of their respective attorneys, who are attorneys of their own choosing, and that thereafter no

**DRAFT 16-Feb-12**

such Party shall deny the validity of this Agreement on the ground that they did not have advice of counsel.

4.8.  **Further Documents**.  The Parties hereby agree to execute any and all further documents necessary to affect the respective rights and obligations under this Agreement.

4.9.  **Severability**.  If any provision of this Agreement is held to be invalid, illegal, unenforceable, or contrary to law by a court of law in the United States or elsewhere, all of the other provisions of this Agreement shall nevertheless remain in full force and effect.

BOS2 916107.4

Appendix 10

Amendments.

1. Ideamax allows Rakupuri to sell current patented products (Drji Clean) in USA. It's nothing to do with Ideamax's future pateted products.

2. Rakupur & Ideamax jointly work together to send warning letters to chinese produced Cleaner distributors. And Both of us agree to take necessary legal actions, if needed.

Eugene Lee
Ideamax

_Eugene Lee_

Aekyung Lee
_Aekyung Lee_

Rakupuri. ink.

_Y. Amano_

Appendix 11

**DRAFT 16-Feb-12**

WHEREFORE, the Parties hereby acknowledge their agreement and consent to the terms and conditions set forth above through their respective signatures as set forth below:

RAKUPURI, INC.

_Rakupuri, ink_
Signature

_Y, Amano_
Printed Name

_onner_
Title

_2, 21, 12._
Date

IDEAMAX

_[signature]_
Signature

_Eugene Lee_
Printed Name

_onner_
Title

_2-21-12_
Date


EUNCHANG LEE

_[signature] Lee_
Signature

_Eugene Lee_
Printed Name

_3-5-12_
Date


AEKYUNG LEE

_Aekyung Lee_
Signature

_Aekyung Lee_
Printed Name

_3-6-12_
Date

Appendix 12

# "EXHIBIT B"

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FLEXIBLE INNOVATIONS LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Case No. 4:12-CV-856-A |
| | § | |
| IDEAMAX, EUGENE LEE, AND | § | |
| AEKYUNG LEE | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF EUNCHANG LEE AKA EUGENE LEE

| | |
|---|---|
| STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF _____ | § |

**BEFORE ME.** the undersigned authority, on this day personally appeared EUNCHANG LEE A/K/A EUGENE LEE, who after being administered the oath, stated under oath the following:

1. "My name is Eunchang Lee a/k/a Eugene Lee. I am over 21 years of age, of sound mind, am competent to make this affidavit, and am suffering from no disability preventing me therefrom. The statements made herein are within my personal knowledge and are true and correct. I have read Defendants' Motion to Set Aside Clerk's Entry of Default Against Defendants and all facts set forth therein, with the exception of legal conclusions, are true and correct unless otherwise indicated.

2. "I am the owner and the president of Defendant IDEAMAX, a sole proprietorship operating in California. On or about December 5, 2012, I received a Summons in a Civil Action

Appendix 14

(the "Summons") and a copy of the Complaint in Case Number 4:12-CV-856-A (the "Complaint"). After I read the Complaint, I was unsure whether there needed to be a response to the Complaint, because I thought that Plaintiff FLEXIBLE INNOVATIONS LTD.'s ("FLEXIBLE") claims had been resolved by a prior Confidential Settlement Agreement (the "CSA").

3.      "In 2011, IDEAMAX, my wife, and I were sued in California under Cause No. SACV11-01428 DOC (the "California Suit") for, among other things, claims of trademark infringement and related claims in regards to U.S. Trademark Registration No. 3,407,948 (the "DIGICLEAN Mark"). The California Suit was resolved by the CSA wherein the parties, including Rakupuri Inc., agreed to release and waive all claims in any way arising out of or related to the allegations and claims in the California Suit; further, the release and waiver of such claims extended to any assigns and successors of the parties to the CSA. Accordingly, when I agreed to the CSA, I understood, based upon the advice of counsel, that claims related to any alleged infringement of the DIGICLEAN Mark could not and would not be brought against me, my wife, or my company. From my review of the Complaint, it seemed the claims alleged by Plaintiff in the Complaint were closely related to the claims of the California Suit and even seemed to include some of the same facts.

4.      "As such, I was not sure whether the lawsuit was even valid or legal, and I did not know whether I would need counsel to address the situation. My hope was that I could avoid the need of legal action and expense by addressing the situation directly with FLEXIBLE, which I attempted to do by email. As I indicated in my email to FLEXIBLE, IDEAMAX and I acknowledged and respected the CSA with Rakupuri, Inc. and had no intention of using the

DIGICLEAN Mark. I sought to have FLEXIBLE cease this lawsuit because its allegations were wrong.

5.      "Although I did not receive a response to my email, during the time prior to learning of the default judgment hearing in this lawsuit, I did not believe any immediate action was necessary and so continued to wait in the hopes of avoiding litigation and legal fees. My belief that action was not required was due a misinterpretation of the Summons in a Civil Action I received in this lawsuit and a misunderstanding of the nature of the suit. Because all of the allegations in FLEXIBLE's Complaint seemed to relate primarily, if not exclusively, to IDEAMAX. Thus, I believed that the suit primarily dealt with IDEAMAX and that my wife and I received Summons only as a result of being related to IDEAMAX, her as an employee and me as owner. I have never before dealt with a lawsuit without the help of legal counsel who have advised me and helped explain various legal requirements; however, in this case, because I was in doubt as to whether I would need counsel and hoped to avoid legal fees because I believed the CSA did away with such claims as FLEXIBLE's, I did not immediately seek counsel. Thus, based upon my limited understanding of legal matters and requirements, because the lawsuit seemed to be directed at IDEAMAX. I thought that IDEAMAX's deadline to file an answer to the Complaint would govern the deadline for responding to the suit.

6.      "As stated in my previous affidavit, in reading and attempting to interpret the Summons in a Civil Action in this lawsuit and its instructions, I misunderstood the phrase "United States Agency," believing that phrase to mean simply an agency or entity formed in the United States. As a result, IDEAMAX is a business entity formed in the United States. I believed that IDEAMAX was a "United States Agency," as used in the Summons, and so was not required to respond for sixty (60) days. Therefore, because the alleged actions complained of by

Plaintiff in the Complaint revolved around IDEAMAX, and because IDEAMAX, in my understanding fell under the classification of a "United States Agency," I believed that response to this lawsuit, if necessary despite the CSA, was due sixty (60) days from the date of service. After learning of and attending the hearing on FLEXIBLE's Motion for Default Judgment, I realized my various errors in relation to this lawsuit and immediately sought the aid of legal counsel to advise me.

7.      Contrary to FLEXIBLE's contention in the Response to Motion to Set Aside Entry of Default, I am not savvy or experienced with legal matters, nor do I have legal acumen. As previously stated, I have difficulty fully understanding legal terms and am not versed in legal proceedings. In fact, it has been necessary for my legal counsel in this lawsuit to translate and/or explained both my previous affidavit and this one in Korean for my review and understanding prior to me signing same. Although I have previously been involved in legal proceedings, as FLEXIBLE notes in its Response, in those cases I was assisted and advised by counsel. Had I known that legal action would be immediately necessary to address this lawsuit and that it would not be dropped as a result of the CSA as I believed and believe it should be, I would have immediately retained legal counsel to aid me, as I am aware of my limited understanding of the law and lawsuits. As it was, upon learning that this lawsuit was going forward despite my attempts to contact FLEXIBLE and resolve the matter outside of Court, I immediately sought and obtained the legal counsel I require to assist me in this lawsuit.

8.      "I hereby declare that all statements herein that are within my personal knowledge are true and correct and that any statements herein based upon information and belief are believed to be true. I further hereby declare that these statements are made under penalty of perjury."

**FURTHER, AFFIANT SAYETH NOT.**

EUNCHANG LEE AKA EUGENE LEE,
Affiant

**SUBSCRIBED AND SWORN TO** before me, the undersigned notary, on the 1st

day of March 2013, by EUNCHANG LEE AKA EUGENE LEE to certify which witness my

hand and official seal.

Notary Public, State of California
Jaeuk Lee, Notary Public
Printed Name
My Commission Expires Jun-11, 2016



JAEUK LEE
COMM. #1961682
Notary Public-California
ORANGE COUNTY
My Comm. Exp. JUN. 11, 2016

_AFFIDAVIT OF EUGENE LEE AKA EUNCHANG LEE_                           **PAGE 5**

Appendix 18